UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACQIS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-13560-ADB |
| | * | |
| EMC CORPORATION, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

June 10, 2015

BURROUGHS, D.J.

**I.     Introduction**

This patent infringement case was recently transferred to this Court from the Eastern District of Texas, where it was originally filed. Plaintiff ACQIS, LLC ("ACQIS") alleges that Defendant EMC Corporation ("EMC") has infringed claims in 11 patents owned by ACQIS.[1] Specifically, ACQIS alleges that 20 EMC computer storage products infringe 22 claims from these 11 patents.[2] The EMC products at issue in this case are modular computer systems, and the patents-in-suit each describe and claim one or more computer modules that can be removed from one console and used in another console.

---

[1] The 11 patents-in-suit are U.S. Patent Nos. 7,363,416 ("the '416 Patent"), 7,676,624 ("the '624 Patent"), 7,818,487 ("the '487 Patent"), 8,041,873 ("the '873 Patent"), RE41,294 ("the RE'294 Patent"), RE41,961 ("the RE'961 Patent"), RE42,814 ("the RE'814 Patent"), RE43,119 ("the RE'119 Patent"), RE43,171 ("the RE'171 Patent"), RE44,468 ("the RE'468 Patent"), and RE42,984 ("the RE'984 Patent").

[2] The number of EMC products currently accused is 20, and the number of claims currently asserted against EMC is 22. There is an outstanding motion by ACQIS to amend its infringement contentions by adding to the case 13 new products and 4 new claims. ACQIS filed this motion and EMC opposed it while the case was still pending in the Eastern District of Texas, and it has not yet been resolved. EMC also notes that ACQIS recently informed EMC that it may seek to add additional products to the case (beyond those at issue in ACQIS's motion to amend its infringement contentions). [Dkt. 81, at 13.]

Before the Court is EMC's Motion to Stay Pending Inter Partes Review ("IPR"). [Dkt. 80.][3] The United States Patent and Trademark Office ("PTO") has instituted IPRs for 2 of the 11 patents-in-suit, involving 3 of the 22 claims asserted against EMC. EMC now asks the Court to stay this case in its entirety until the PTO completes those IPRs, which is expected to happen by March 11, 2016.

As described in greater detail below, EMC argues that the requested stay is appropriate because discovery is still in its early stages and a trial date has not been set, a stay would likely simplify the issues in question and trial of the case, and it would not unduly prejudice or present a clear tactical disadvantage to ACQIS. ACQIS opposes a stay on the grounds that the parties and the Eastern District of Texas have already made substantial investments in the case, the IPR challenges are limited in scope and thus are unlikely to result in significant simplification of the issues in the case, EMC unreasonably delayed in petitioning for IPR, and a stay would unduly prejudice ACQIS. As an alternative to a stay, ACQIS proposes that the Court set a trial for summer 2016, a few months after decisions are expected to be entered in the IPRs.

After careful consideration of the parties' briefs and additional points raised at the hearing conducted on May 29, 2015, and for the reasons explained in this Memorandum and Order, EMC's motion for a stay is GRANTED, and the case is ordered to be stayed in its entirety until a decision is issued in the IPRs.

---

[3] Citations to docket entries in this Memorandum and Order refer to the District of Massachusetts docket, after the case was transferred from the Eastern District of Texas.

**II.     Procedural Background**

ACQIS filed its complaint against EMC in the Eastern District of Texas on September 9, 2013 and served it on September 12, 2013.[4] ACQIS LLC v. EMC Corporation, No. 6:13-CV-00639 (E.D. Tex.). On December 6, 2013, EMC moved to transfer the action to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). On April 30, 2014, before the motion to transfer was ruled on, the case against EMC was consolidated with three related lawsuits brought by ACQIS against other defendants in the Eastern District of Texas. The lead case was the earliest filed of these four cases, ACQIS LLC v. Alcatel-Lucent USA, Inc., No. 6:13-CV-00638 (E.D. Tex.).

On September 10, 2014, Judge Leonard Davis of the Eastern District of Texas conditionally granted EMC's motion to transfer the action to the District of Massachusetts, retaining jurisdiction over EMC through the claim construction process and noting that the transfer would become effective the day that he issued his claim construction opinion. [Dkt. 44.]

On February 12, 2015, a Markman hearing was held in the Eastern District of Texas. On April 13, 2015, Judge Davis issued both a claim construction opinion [Dkt. 71] and an order transferring the case against EMC to this Court [Dkt. 72].

On April 27, 2015, EMC filed this motion to stay. ACQIS filed its opposition on May 11, 2015 [Dkt. 84], and EMC filed a reply brief on May 26, 2015 [Dkt. 88]. A hearing was conducted on May 29, 2015. EMC filed a supplemental memorandum on June 4, 2015 [Dkt. 96], and ACQIS filed a response to EMC's supplemental memorandum on June 9, 2015 [Dkt. 101].

---

[4] In its original complaint, ACQIS alleged that EMC infringed eight patents: the '416, '624, '487, '873, RE'294, RE'814, RE'171, and RE'468 Patents. On March 11, 2014, ACQIS amended its complaint to add three additional patents: the RE'119, RE'961, and RE'984 Patents.

**III.     Inter Partes Review**

In 2012, the Leahy-Smith America Invents Act ("AIA") took effect, replacing the former inter partes reexamination process with an inter partes review process. See 35 U.S.C. §§ 311-319. IPR is an expedited procedure for challenging the validity of a patent before the PTO and its Patent Trial and Appeal Board ("PTAB"). Id. The PTO may institute an IPR only if it determines that "there is a reasonable likelihood that the petitioner would prevail with respect to at least one of the claims challenged in the petition." 35 U.S.C. § 314(a). If the PTO grants an IPR petition, the final determination in the IPR must be issued within one year from the date that the petition is granted.[5] 35 U.S.C. § 316(a)(11).

Between September 4 and 10, 2014, EMC filed IPR petitions challenging claims in 3 of the 11 patents-in-suit: the RE'171 Patent, the '873 Patent, and the RE'814 Patent. In March 2015, after the Markman hearing was held but before the claim construction opinion was issued and before the action was transferred from the Eastern District of Texas to this Court, the PTO denied EMC's petition as to the RE'171 Patent, and instituted IPRs of the '873 and RE'814 Patents. The two instituted IPRs involve a total of 3 of the 22 claims asserted in the litigation.[6] Decisions are expected by March 11, 2016, one year after EMC's petitions were granted.

**IV.     Discussion**

    **A.     Legal Standard**

The Court has the inherent power to manage its docket by staying proceedings, including pending IPR. Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); Ethicon, Inc. v. Quigg, 849

---

[5] The Director of the PTO may extend this deadline by up to six months for good cause. 35 U.S.C. § 316(a)(11).

[6] These are claim 61 of the '873 Patent and claims 24 and 31 of the RE'814 Patent.

4

F.2d 1422, 1426-27 (Fed. Cir. 1988). Whether or not to grant a stay is within the Court's discretion. Three factors are considered in deciding a motion to stay while an IPR is pending:

> (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party.

SurfCast, Inc. v. Microsoft Corp., No. 2:12-CV-333, 2014 WL 6388489, at *1 (D. Me. Nov.14, 2014). The analysis considers the totality of the circumstances, and "while prior decisions may prove instructive, the inquiry is largely case specific." Id. (citation omitted). As described below, the Court concludes that all three factors weigh in favor of a stay to varying degrees.

### B. Factor 1: The Stage of the Litigation, Including Whether Discovery Is Complete and Whether a Trial Date Has Been Set

First, the Court asks "whether discovery is complete and a trial date has been set." Surfcast, 2014 WL 6388489, at *1. This inquiry is aimed at determining "whether litigation has progressed significantly enough for a stay to be disfavored." PersonalWeb Techs., LLC v. Apple Inc., No. 4:14-CV-1683, 2014 WL 4757816, at *2 (N.D. Cal. Sept. 24, 2014). "The earlier the stage of proceedings, the greater the reason to grant a stay." Surfcast, 2014 WL 6388489, at *2.

In this case, discovery is not yet complete, and a trial date has not been set in this Court. On the one hand, document and written discovery are underway, a Markman hearing has taken place, and a claim construction opinion has been issued. On the other hand, no depositions have been taken, expert discovery has not yet begun, and summary judgment motions have not been prepared or filed. In its opposition, ACQIS emphasizes the fact that nearly 1.5 million pages of documents have been produced. However, the majority of these documents (nearly 900,000 pages) were produced by third parties, and both parties are still seeking additional documents. Furthermore, at least some of the cost that ACQIS has incurred in document discovery would

have been incurred irrespective of the case against EMC, since ACQIS sued three other defendants along with EMC, and there is overlap in the documents produced in each case. And although this action is not in an incipient stage (it was filed in September 2013), ACQIS now seeks to expand the scope of the case by accusing new products and adding new patent claims.

Judge Davis had set a trial date of April 2016 in the Eastern District of Texas before the action was transferred to this Court. However, the parties agreed that as a result of the transfer (among other considerations), this trial date and the other deadlines leading up to it were no longer viable. For this reason, on April 10, 2015, before the claim construction opinion was issued and while the case was still pending in the Eastern District of Texas, the parties jointly moved to vacate the scheduling order, a motion that was not resolved before the case was transferred to this Court.[7] At the hearing on EMC's motion to stay, the joint motion to vacate was also addressed, and the Court granted it without yet setting another trial date. Thus, there is currently no trial date in this Court, nor are any deadlines in effect for fact or expert discovery or dispositive motions.

Notwithstanding the fact that substantial document and written discovery has already occurred, and a claim construction opinion has been issued, a significant amount of work still remains to be done by the parties and this Court. Other courts have stayed cases that were further along than this one pending IPR. See, e.g., SurfCast, 2014 WL 6388489, at *2 (granting stay

---

[7] In his September 10, 2014 order conditionally granting EMC's request for a change of venue to the District of Massachusetts, Judge Davis noted his concern about the potential for delay as a result of the transfer and wrote that "[i]t is hoped that the judge [in the District of Massachusetts] will be able to accommodate the case's current trial dates, insofar as consistent with his or her own schedule." [Dkt. 44.] At the hearing on this motion to stay, ACQIS pointed to this language in Judge Davis's order as a reason to deny EMC's motion to stay. The Court fully appreciates and shares Judge Davis's view that the mere fact of a transfer should not result in a long delay. However, this view was expressed months prior to the institution of the IPRs and before both parties sought to vacate the prior scheduling order. Thus, the Court considers EMC's request for a stay in light of these intervening developments.

where "discovery is complete, a Markman order has been issued, and briefing is complete on the pending summary judgment, Daubert, and related motions"); PersonalWeb Techs., 2014 WL 4757816, at *3 (granting stay where "discovery has been completed," the parties "have taken a dozen depositions," and a claim construction order has issued as to all of the patents-in-suit). In light of the posture of this case, the Court concludes that this factor weighs moderately in favor of a stay.

### C.     Factor 2: Whether a Stay Will Simplify the Issues in Question and Trial of the Case

Second, the Court considers "whether a stay will simplify the issues in question and trial of the case." PersonalWeb Techs., 2014 WL 4755816, at *3. A stay is favored where the outcome of the IPR "would be likely to assist the court in determining patent validity and, if the claims were canceled . . . would eliminate the need to try the infringement issue." SurfCast, 2014 WL 6388489, at *2.

ACQIS argues that this factor disfavors a stay because only 2 of the 11 patents-in-suit and only 3 of the 22 claims asserted against EMC are under review in the instituted IPRs. ACQIS contends, therefore, that the IPRs cannot eliminate the need for a trial and will not simplify the case. ACQIS urges the Court not to allow EMC to "hijack" the litigation by granting a stay, thereby "delay[ing] resolution of the 19 claims and 9 patents not subject to IPR."

EMC counters that even though the majority of the patents and claims in the litigation are not involved in the IPRs, it is "beyond dispute" that the IPRs will simplify the issues in this case. According to EMC, this inevitable streamlining is due to the significant overlap in claim terms between all 22 of the asserted claims, as well as among all 11 patents. The patents-in-suit come from three patent families, and as ACQIS acknowledged in its Markman brief, there is a

7

"similarity of inventive disclosure" in the patents, which all "share similar specifications," and all of the asserted claims share the same "key inventive aspect."[8]

This is not an instance where the claims under review in the IPRs have little to do with the other claims asserted in the litigation. As a result of the significant overlap among the patents-in-suit, and between the claim elements of the claims under review in the IPRs and those found in each of the remaining 19 claims, the Court agrees with EMC that the IPRs are likely to simplify the issues in this case, regardless of the specific outcomes of the IPRs.[9] Conversely, denying a stay entirely, or granting a stay only as to those patents and claims under IPR, could result in costly inefficiencies for the parties and the Court by introducing a need for certain portions of discovery and motion practice to be redone after the completion of the IPRs.

Other courts have granted stays even where, as in this case, the IPR proceedings do not involve all asserted patents or claims. See, e.g., Serv. Solutions U.S., LLC v. Autel.US Inc., No. 13-10534, 2015 WL 401009, at *3 (E.D. Mich. Jan. 28, 2015) ("[T]he Court is not convinced that a stay is inappropriate merely because only one patent is under review. Though a stay would have greater potential to simplify the issues if all seven patents were involved in the IPR proceeding, this does not mean that a more limited review would not help simplify the case."); Finjan, Inc. v. FireEye, Inc., No. C13-03133, 2014 WL 2465267, at *4 (N.D. Cal. June 2, 2014) ("When there are overlapping issues between the re-examined patents and other non-reexamined patents-in-suit, courts have found that staying the entire case is warranted."); Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc., No. 12-CV-1107, 2014 WL 1369721, at *5-*6 (D.

---

[8] The PTO has also acknowledged this overlap by requiring ACQIS to file "terminal disclaimers" between the three patent families.

[9] Further, the Court expects EMC not to attempt to relitigate invalidity arguments that were addressed in the IPRs, albeit in relation to different patents and claims.

Del. Apr. 7, 2014) ("Contrary to [the plaintiff's] suggestion, there is no requirement that the issues in the IPR be identical to those in the litigation.").

Certainly, this factor does not favor a stay as strongly as in a case where all of the claims in the litigation are under review in an IPR, and the Court agrees with ACQIS that the IPRs most likely will not eliminate the need for a trial. However, given the significant overlap outlined above, the Court concludes that this factor weighs slightly in favor of a stay.

### D. Factor 3: Whether a Stay Will Unduly Prejudice or Present a Clear Tactical Disadvantage to the Nonmoving Party

In assessing a request for a stay pending IPR, "mere delay does not rise to the level of undue prejudice." Surfcast, 2014 WL 6388489, at *3. ACQIS asserts that a stay would result in "significant prejudice," but it has not identified any actual prejudice that it would suffer from a stay. Notably, the parties are not direct competitors, and ACQIS is a non-practicing entity that no longer sells any products. See Bonutti, 2014 WL 136721, at *4 ("The relationship between the parties is no impediment to a stay . . . where the plaintiff is a non-practicing entity."). Unlike EMC, ACQIS does not participate in the market for modular computer systems or mass storage products. In addition, ACQIS did not seek a preliminary injunction in this case, undermining its claim of undue prejudice. See Studer Prof'l Audio GmbH v. Calrec Audio Ltd., No. 2:12-CV-02278, 2012 WL 3061495, at *2 (D.N.J. July 25, 2012) (concluding that a stay would not unduly prejudice a plaintiff that did not seek a preliminary injunction, even where the parties were direct competitors). ACQIS "will still have all of [its] legal and equitable remedies available when the stay is lifted," id., and ACQIS has not identified any reason why money damages would not suffice to compensate it for any harm incurred during the stay.

Further, the Court disagrees with ACQIS's suggestion that EMC engaged in dilatory conduct either in filing its IPR petitions or in moving for a stay. EMC filed its three IPR petitions

9

between September 4 and 10, 2014, within about a week of its statutory deadline to do so. See 35 U.S.C. § 315(b) ("An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent."). ACQIS argues that this counsels against granting a stay. On closer inspection, however, the timing of the petitions was reasonable because of the vast number of claims in the asserted patents (see, e.g., RE'171 (66 claims); '873 Patent (103 claims); RE'814 Patent (53 claims)), the fees associated with filing IPR petitions, and the PTAB's page limits for IPR petitions. It was reasonable for EMC to wait for ACQIS to choose which claims it intended to assert in the litigation before pursuing IPRs. Once ACQIS served its infringement contentions, EMC prepared and filed its IPR petitions in a timely manner—within four months. See, e.g., NFC Tech. LLC v. HTC Am., Inc., No. 2:13-CV-1058, 2015 WL 1069111, at *4 (E.D. Tex. Mar. 11, 2015) (concluding that the defendant was diligent in filing an IPR petition four months after the plaintiff served its infringement contentions). Thereafter, EMC filed its motion to stay approximately one month after the PTAB instituted the two IPRs. This timing was not unreasonable and does not presumptively place ACQIS at a tactical disadvantage.

In sum, the IPRs are already underway, and a final decision is expected on or before March 11, 2016. ACQIS, a non-practicing entity that does not compete directly with EMC, has not identified any actual harm that would result from a stay, and EMC was timely in filing its IPR petitions and moving for a stay. Based on all of these considerations, the Court concludes that a stay of approximately nine months (or less) from the date of this Memorandum and Order until a decision is issued in the IPRs is unlikely to cause undue prejudice or present a clear tactical disadvantage to ACQIS. Thus, this factor weighs in favor of a stay.

### E.  The Contemporaneous Litigation Against Alcatel-Lucent

In its briefs in support of its motion to stay, EMC focuses primarily on the completion of the IPRs, which is expected by March 11, 2016. In some portions of its briefs and at the hearing, however, EMC has suggested that the Court should stay this case for a modestly longer period— until after the trial in the related case of ACQIS LLC v. Alcatel-Lucent USA, Inc., No. 6:13-CV-00638 (E.D. Tex.), which is currently scheduled to begin in April 2016. EMC's request for a longer stay is DENIED WITHOUT PREJUDICE at this time. EMC may renew its request (and the parties may brief their positions) after the completion of the IPRs in this case, when the parties and the Court will have the benefit of knowing whether the trial against Alcatel-Lucent is likely to proceed on its current schedule.

## V.  Conclusion

For the above reasons, EMC's Motion to Stay Pending Inter Partes Review [Dkt. 80] is GRANTED. This action is hereby stayed in its entirety until a decision is rendered in the IPRs. The parties shall promptly notify the Court of that occurrence, and the Court will set a conference to address the schedule going forward.

**SO ORDERED.**

Dated: June 10, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE