UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACQIS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>EMC CORPORATION,<br><br>    Defendant. | Civil Action No. 14-cv-13560 |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Defendant EMC Corporation filed a letter requesting the Court to compel production of (1) withheld settlement communications based on an overbroad assertion of mediation privilege; (2) withheld redacted business documents that contain no legal advice; and (3) withheld information based on attorney-client privilege where no attorney is identified. [ECF Nos. 200, 214]. Plaintiff ACQIS opposes the request. [ECF No. 204].

    **I.**    **Settlement Communications**

In a patent case with no state law issues, state law does not "suppl[y] the rule of decision" for the particular "claim or defense" implicated by the privilege dispute, and claims of privilege are therefore governed by federal common law, unless the U.S. Constitution, federal statute, or rules prescribed by the Supreme Court provides otherwise. See Fed. R. Evid. 501. Neither the First Circuit nor any court in this district has addressed whether a federal mediation privilege exists at common law. Several district courts, however, have recognized such a privilege. See, e.g., United States v. Union Pac. R.R. Co., No. CIV06-1740FCDKJM, 2007 WL 1500551, at *6 (E.D. Cal. May 23, 2007); Microsoft Corp. v. Suncrest Enter., No. C03-05424JF (HRL), 2006

1

WL 929257, at *2 (N.D. Cal. Jan. 6, 2006); Sheldone v. Pa. Tpk. Comm'n, 104 F. Supp. 2d 511, 513 (W.D. Pa. 2000); Folb v. Motion Picture Indus. Pension & Health Plans, 16 F. Supp. 2d 1164, 1176 (C.D. Cal. 1998); In re RDM Sports Grp., Inc., 277 B.R. 415, 430 (Bankr. N.D. Ga. 2002). But see Molina v. Lexmark Int'l, Inc., No. CV0804796MMMFMX, 2008 WL 4447678, at *8 (C.D. Cal. Sept. 30, 2008). Following the court's reasoning in Sheldone, 104 F. Supp. at 512–13, and applying the Supreme Court's factors as outlined in Jaffee v. Redmond, 518 U.S. 1 (1996), the Court sees no reason to depart from the conclusions of these district courts and finds that a federal mediation privilege applies to the privilege disputes raised by the instant letter.

That being said, the precise scope of the federal mediation privilege remains unclear even where courts recognize such a privilege. See Molina, 2008 WL 4447678, at *25 (noting lack of clarity in scope of federal mediation privilege). Several courts have agreed that the federal mediation privilege protects only communications made in direct connection with a formal mediation. See e.g., In re RDM Sports Grp., Inc., 277 B.R. at 431 (holding that federal mediation privilege applied "only [to] those communications made to the mediator, between the parties during the mediation, or in preparation for the mediation"); Sheldone, 104 F. Supp. 2d at 515 (holding that mediation privilege protects "'all written and oral communications made in connection with or during' a mediation conducted before a 'neutral' mediator," but declining to exhaustively elaborate on scope (quoting W.D. Pa. L.R. 16.3.5(E), 16.3.1)); Folb, 16 F. Supp. 2d at 1179–80 (holding that federal mediation privilege applies to "all communications made in conjunction with a formal mediation," and specifying that privilege did not apply to

"[s]ubsequent negotiations between the parties . . . even if they include information initially disclosed in the mediation.").[1]

This Court holds that communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation are protected by the federal mediation privilege. Settlement negotiations in which a mediator is not actively and directly involved that follow a formal mediation are not protected by the mediation privilege, even when they contain information learned during the mediation or where they occurred in light of mediation, and such communications must therefore be produced barring any other applicable rules. See Folb, 16 F. Supp. 2d at 1180 (holding that "any post-mediation communications are protected only by Rule 408's limitations on admissibility"). ACQIS's representations regarding the mediators' involvement during settlement discussions in the Appro and Alcatel-Lucent litigations are too vague to allow the Court to conclude that they are protected. To the extent that this ruling means that ACQIS's production is incomplete, it is ordered to supplement it.

Non-party IBM filed a letter with this Court requesting an opportunity to intervene regarding any order compelling the production of documents being withheld by ACQIS on the basis of a jointly held mediation privilege with IBM. [ECF No. 219]. The Court orders parties to provide notice to IBM of this order. This portion of the Court's order—regarding the settlement

---

[1] This scope appears consistent with the Texas Alternative Dispute Resolution Procedures Act, which specifically protects communications made "in an alternative dispute resolution procedure." Tex. Civ. Prac. & Rem. Code Ann. § 154.073(a)–(c), § 154.053(a). "The alternative dispute resolution procedures [under Texas law] . . . do not include informal settlement negotiations between the parties conducted without an impartial third-party facilitator." Abbott v. GameTech Int'l, Inc., No. 03-06-00257-CV, 2009 WL 1708815, at *4 (Tex. App. June 17, 2009).

3

communications—will take effect fourteen days following the entry of this Order to allow IBM an opportunity to intervene.

## II. Business Documents and Claiming Attorney-Client Privilege Without Identifying an Attorney

Attorney-client privilege only protects: (1) communications that relate to (2) the seeking of legal advice of any kind (3) from a professional legal adviser in his capacity as such, and that (4) were made in confidence (5) by the client (6) with the expectation that they be protected from disclosure by himself or by the legal adviser, (7) except if the protection is waived. Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (citing 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). Attorney-client privilege is construed narrowly and "only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client." In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001).

Despite the testimony of some of its witnesses to the contrary, ACQIS asserts that the redactions to certain disputed business documents are based on attorney-client privilege because they contain legal advice. In its response letter, ACQIS has not explained how it was able to conclude that "[t]he redacted portions contain legal advice that could only have come from attorneys," particularly where it is unable to identify any attorney involved in the communication and in light of its witnesses' contrary assertions. It states only that ACQIS employed two other firms prior to Cooley LLP's involvement. The testimony of ACQIS's witnesses to which EMC cites to strongly suggests that the redacted business documents did not actually contain legal advice. ACQIS also offers the same argument in support of its claim of attorney-client privilege over hundreds of other documents that do not seem to include any attorney whatsoever, asserting, for example, that they contain information that "only could have come from legal

counsel." Many of the entries appear to reference patent prosecution and licensing and portfolio strategy, but the Court is nonetheless unable to conclude based on the information in the privilege log that these documents manifest the essential elements of attorney-client privilege. It is equally possible, based on the information in the privilege log, that such communications involved business strategy rather than privileged legal advice. ACQIS's conclusory assertions of "privileged legal advice" are therefore insufficient. See Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 47 (E.D.N.Y. 2011).

ACQIS shall provide further support for its assertion of attorney-client privilege beyond what is already included in the privilege log and beyond the seemingly speculative argument in its letter that the documents contain information that "could only have come from attorneys." This could be satisfied with, for example, information showing a connection between the information in the communication and a particular attorney or law firm, or information showing that the disputed document contains information from another undisputed document that is privileged. The parties may also consider whether affidavits or declarations could satisfy ACQIS's burden. If the parties are still unable to then resolve this dispute, the Court will conduct an *in camera* review of a sampling of these documents.

**So Ordered.**

Dated: June 29, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE