UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ACQIS, LLC,
    Plaintiff,

        v.                                    CIVIL ACTION NO.
                                              14-13560-ADB

EMC CORPORATION,
    Defendant.


**MEMORANDUM AND ORDER RE:
MOTION TO ENFORCE COURT'S JUNE 29, 2017 ORDER
(DOCKET ENTRY ## 317, 321)**

**November 16, 2017**

**BOWLER, U.S.M.J.**

Pending before this court is a motion in the form of a letter filed by defendant EMC Corporation ("EMC") to compel plaintiff ACQIS, LLC ("ACQIS") to comply with a June 29, 2017 Order (Docket Entry # 303) with respect to production of documents withheld on the basis of the attorney-client privilege. (Docket Entry ## 317, 321).[1]  After conducting a hearing on October 20, 2017, this court took the motion (Docket Entry # 321) under advisement.

BACKGROUND

The letter depicts two categories of documents that EMC seeks under separate Roman numerals.  The category of documents

---

[1] The above docket entries refer to the same motion, one in redacted and the other in unredacted form.  For ease of reference, this opinion primarily cites the unredacted version. (Docket Entry # 321).

sought in Roman numeral I (Docket Entry # 321) is no longer at issue (Docket Entry # 333, n.1).

In the remaining category (Roman numeral II), EMC seeks documents on the basis that the privilege log fails to identify an attorney as an author, a sender, a recipient, or a contributor to legal advice reflected in the documents.[2] (Docket Entry # 321, ¶ II) (Docket Entry # 322-1, pp. 5-6) (Docket Entry # 326, ¶ C). The dispute regarding these documents began in 2014 (Docket Entry # 322-5, p. 6)[3] and culminated in March 2017 when EMC filed a letter seeking to compel their production. (Docket Entry ## 200, 214). In the June 29, 2017 Order, the court was "unable to conclude based on the information in the privilege log that these documents manifest the essential elements of attorney-client privilege." (Docket Entry # 303). Notably, the court rejected "ACQIS' conclusory assertions of 'privileged legal advice'" as "insufficient." (Docket Entry # 303, p. 5) (citing Safeco Inc. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 47 (E.D.N.Y. 2011)).

In light of ACQIS' insufficient showing, the court ordered ACQIS to "provide further support for its assertion of attorney-

---

[2] At the hearing, EMC confirmed that the above category is the only remaining issue. (Docket Entry # 371, p. 7). Accordingly, this opinion does not address the 12 documents relating to information regarding attorneys' fees and engagements in ACQIS' opposition, paragraph D. (Docket Entry # 326, ¶ D, p. 6).

[3] Page numbers for docket entries refer to the page as docketed as opposed to the page number in the actual document.

client privilege *beyond* what is already included in the privilege log and *beyond* the seemingly speculative argument in its letter that the documents contain information that 'could only have come from attorneys.'" (Docket Entry # 303, p. 5) (emphasis added). As a means to make a sufficient showing, the court suggested that ACQIS submit declarations, affidavits, "information showing a connection between the information in the communication and a particular attorney or law firm, or information showing that the disputed document contains information from another undisputed document that is privileged." (Docket Entry # 303, p. 5).

In response, ACQIS identified a number of privileged documents regarding ACQIS' engagement of certain law firms and connected such documents to a number of withheld documents purportedly involving communications with the particular law firm during the same time frame. (Docket Entry # 326). ACQIS also provided excerpts of deposition testimony by William W. Y. Chu ("Chu"), ACQIS' founder, and Douglas Gordon DeVivo ("DiVivo"), an investor and chairman of ACQIS' board of directors. (Docket Entry ## 200-30, 326-2, 326-3, 326-4, 326-5). Finally, ACQIS briefly described the withheld documents. (Docket Entry # 326) (Docket Entry # 322-1, pp. 5-6).

EMC presently argues that ACQIS fails to comply with the Order by substantiating the assertion of the privilege with a declaration or other evidence. (Docket Entry ## 321, 333).

3

ACQIS maintains that it complied with the Order by providing "information showing a connection between the information in the communications and the particular law firm." (Docket Entry # 326, p. 3). ACQIS points out that it cross referenced privileged entries in the log to disputed entries and provided deposition testimony. (Docket Entry # 371, p. 12).

## DISCUSSION

The June 29, 2017 Order sets out the applicable law. As noted therein, federal common law applies "unless the U.S. Constitution, federal statute, or rules prescribed by the Supreme Court provides otherwise." (Docket Entry # 303, p. 1); Fed.R.Evid. 501. As further stated in the Order, the:

> Attorney-client privilege only protects: (1) communications that relate to (2) the seeking of legal advice of any kind (3) from a professional legal adviser in his capacity as such, and that (4) were made in confidence (5) by the client (6) with the expectation that they be protected from disclosure by himself or by the legal adviser, (7) except if the protection is waived. Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (citing 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). Attorney-client privilege is construed narrowly and "only to the extent necessary to achieve its underlying goal of ensuring effective representation through open communication between lawyer and client." In re Grand Jury Subpoena, 274 F.3d 563, 571 (1st Cir. 2001).

(Docket Entry # 303, p. 4); accord Mississippi Public Employees' Retirement System v. Boston Scientific Corp., 649 F.3d 5, 30, n.23 (1st Cir. 2011) (summarizing similar requirements and citing Cavallaro, 284 F.3d at 245).

Two aspects of the analysis are particularly relevant to the

4

case at bar.  First, the privilege applies only when the lawyer is acting as a lawyer rendering legal advice to a client as opposed to business advice to the client.  See U.S. ex rel. Hamrick v. GlaxoSmithKline LLC, 814 F.3d 10, 17 (1st Cir. 2016) (applying federal common law).  Moreover, "the line between legal advice" and business advice is often difficult to draw and can be "more abstract than concrete."  Id.  At the hearing, EMC represented and ACQIS did not dispute that ACQIS became a patent licensing entity in 2004.  (Docket Entry # 371, p. 4) (Docket Entry # 200-36, pp. 2, 6).  EMC also represented that ACQIS' business therefore entails building a portfolio of patents and licensing and enforcing those patents.  (Docket Entry # 371, p. 4).  The nature of ACQIS' business therefore gives rise to doubt that the myriad of entries reflecting patent analysis uniformly depict legal advice.  Contrary to EMC's position at the hearing (Docket Entry # 371, pp. 10-11), such doubt weighs in favor of conducting *in camera* review.  See id. (affirming district court's decision not to conduct *in camera* review partly because circumstances, consisting of legal advice about removing employee from workplace, "present no particular reason to doubt that the lawyers were giving legal advice").

Second, legal advice is distinguishable from the underlying facts.  See Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981); cf. State of Maine v. U.S. Dept. of Interior, 298 F.3d 60, 71 (1st

5

Cir. 2002) (privilege includes "'facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings'") (quoting United States v. Bay State Ambulance and Hospital Rental Service, Inc., 874 F.2d 20, 27–28 (1st Cir. 1989)). The distinction between unprotected facts and protected legal advice "involves considering the source and nature of the information contained in the documents." Lluberes v. Uncommon Productions, LLC, 663 F.3d 6, 24 (1st Cir. 2011) (applying federal common law to attorney-client privilege). "If the communication contains only client confidences made in pursuit of legal advice—or legal advice based on such client confidences—that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one." Id.; see State of Maine v. U.S. Dept. of Interior, 298 F.3d at 71 ("'by the content of the letters, . . . they relate to *facts* communicated *for the purpose* of securing a legal opinion, legal services or assistance in a legal proceeding'") (quoting Town of Norfolk v. United States Army Corps of Engineers, 968 F.2d 1438, 1458 (1st Cir. 1992)) (emphasis added). Facts that reveal the substance of a client confidence are thus protected. See Lluberes v. Uncommon Productions, LLC, 663 F.3d at 24 n.21; see, e.g., Prasad v. George Washington University, _F.R.D._, 2017 WL 4570771, at *8 (D.D.C. Oct. 12, 2017).

6

Conversely, if "the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged." Lluberes v. Uncommon Productions, LLC, 663 F.3d at 24-25. As explained in Upjohn, "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. U.S., 449 U.S. at 395.

Turning to the subcategories of withheld documents (Docket Entry # 326, pp. 3-5), ACQIS states, albeit belatedly, that it is willing to provide a declaration for the documents in subcategories A and B. (Docket Entry # 326, pp. 3-4). ACQIS is therefore directed to provide a declaration that states for each withheld document in these subcategories the name of the attorney or the individual to whom Chu sent and/or copied each document or the name of the attorney or individual involved in the attorney-client communication or draft letters at issue. The declaration may also include any additional information to establish the privilege. Production of the documents in subcategories A and B is denied without prejudice to be renewed, if necessary, after review of the declaration.

Documents in the first bullet point of subcategory C involve communications between Chu and Cooley LLP ("Cooley"), ACQIS' current counsel. (Docket Entry # 326, p. 4). Represented by Cooley attorneys at the hearing, ACQIS' counsel stated she was

7

willing to provide a declaration listing specific attorneys for the documents from Cooley. (Docket Entry # 371, p. 12, ln. 22-25) (Docket Entry # 371, p. 13, ln. 1-4) (Docket Entry # 371, p. 16, ln. 13-15). None of the entries in the privilege log identifies an attorney even though the documents pertain to Cooley. Accordingly, in light of counsel's representation, ACQIS is directed to identify in a declaration with respect to each of the withheld documents in this bullet point: the attorney or the individual(s) involved in preparing the described attorney-client communication; or the attorney Chou prepared the patent or licensing analysis for in order to seek the legal advice (Docket Entry # 200-23). Production of the documents in the first bullet point in subcategory C is denied without prejudice to be renewed, if necessary, after review of the declaration.

Turning to the withheld documents in the second bullet point in subcategory C, ACQIS represents that the 2008 documents reflect attorney-client communications between Chu and the law firm Robins Kaplan LLP ("Robins Kaplan") regarding patent analysis for the purpose of securing legal advice. (Docket # 326, p. 5). To support this assertion, ACQIS relies on Chu's deposition testimony that Chu approached Robins Kaplan in 2004 "for the possibility of engaging them as our counsel" and that he "talked to them for a period of time." (Docket Entry ## 326, 326-3). ACQIS also identifies a privileged document to a Robins

8

Kaplan attorney and Chu described in the privilege log as e-mail "correspondence containing attorney client communication regarding engagement and diligence prepared for the purpose of providing legal advice." (Docket Entry # 200-23, No. 1114) (Docket Entry # 326-3, p. 10). The temporal proximity of this March 28, 2008 privileged document does not provide sufficient "information showing that the disputed document *contains* information from another undisputed document that is privileged" within the meaning of the June 29, 2017 Order. (Docket Entry # 303, p. 5) (emphasis added). Finally, ACQIS alleges that two produced documents presumably show ACQIS "was engaged with and exchanging information seeking advice from Robins Kaplan in 2007 and 2008." (Docket Entry # 326). ACQIS makes a similar showing with respect to the withheld documents identified in the third bullet point in subcategory C. In order to better evaluate the asserted privilege and in light of the aforementioned doubt that all of these 75 documents reveal legal advice by Robins Kaplan lawyers, this court will conduct an *in camera* review.

With respect to the 48 withheld documents identified in the fourth bullet point, ACQIS relies on two privileged documents sent by Ronald Schultz, Esq., an attorney at Robins Kaplan, to Chu "regarding engagement prepared for the purpose of providing legal advice." (Docket Entry # 200-23, Nos. 1124, 1130). The descriptions of the withheld documents in the privilege log

9

depict these 2004 documents as "regarding patent analysis prepared for the purpose of seeking legal advice." (Docket Entry # 200-23). The privilege log does not identify an attorney as either a recipient or otherwise as a contributor of the legal advice in the withheld documents. ACQIS' opposition, however, asserts that the communications involved "Robins Kaplan." (Docket Entry # 326, p. 5). As to the deposition testimony that ACQIS cites, Chu testified that, except for four letters sent by the law firm Townsend and Townsend and Crew ("Townsend"),[4] he did not know in July 2004 if ACQIS "would have to be involved in litigation to earn licensing fees." (Docket Entry # 326-2). In July 2004, ACQIS did not have legal counsel advising it on "strategy for licensing to companies" other than Townsend sending out the aforementioned letters "asking certain companies whether" they were "interested in licensing." (Docket Entry # 326-2). Chu described the activity with Townsend as "very minimal." (Docket Entry # 326-2). In addition, "some time in 2004," Chu contacted an attorney at Robins Kaplan about the possibility of engaging the firm as ACQIS' counsel.[5] (Docket Entry # 326-3). DeVivo testified that ACQIS approached other law firms and that

---

[4] The name of the firm at that time is taken from ACQIS' opposition. (Docket Entry # 326, p. 5).

[5] The deposition identifies the attorney as "Ron Chute," which may or may not be the same attorney identified in the privilege log as "Ronald Schultz" in light of the similar phonetic sound of the name.

10

Robins Kaplan initially agreed but then decided against partnering with ACQIS. (Docket Entry # 326-4). Here again, in order to better evaluate the asserted privilege and in light of the aforementioned doubt that all of the documents reveal legal advice by Townsend lawyers, this court will undertake an *in camera* review of the documents in this bullet point.

The last bullet point in subcategory C consists of ten documents. ACQIS belatedly describes the 2004 documents as communications between Chu and Townsend "regarding patent and analysis, for purposes of securing legal advice and counsel for patent enforcement and licensing." (Docket Entry # 326, p. 5). To establish the privilege, ACQIS cites to DeVivo's deposition testimony and Chu's deposition testimony. As to the latter, Chu testified that in early 2004 he spoke with Byron Cooper, a litigator at Townsend. (Docket Entry # 326-3). ACQIS also points to two privileged communications described as "[c]orrespondence containing attorney client communication regarding engagement prepared for the purpose of providing legal advice." (Docket Entry # 200-23, Nos. 1136, 1137). In order to better evaluate the asserted privilege and in light of the aforementioned doubt that all of these 48 documents concern legal advice, this court will conduct an *in camera* review of the documents withheld in this last bullet point. (Docket Entry # 326, p. 5).

11

As to *in camera* review, the June 29, 2017 Order states that, "the Court will conduct an *in camera* review of a sampling of these documents" if the parties are unable to resolve the dispute. (Docket Entry # 303). In order to render a comprehensive and thorough review, however, the *in camera* review will include all of the withheld documents in the second through fifth bullet points in the context of the deposition testimony, the recent information provided by ACQIS and summarized above, and the other related exhibits in the record. See generally U.S. ex rel. Hamrick v. GlaxoSmithKline LLC, 814 F.3d at 17. ACQIS shall therefore provide copies of all of the withheld documents in the second, third, fourth, and fifth bullet points in subcategory C as well as a list identifying the individuals in the withheld documents who are attorneys or support personnel. To facilitate the review, ACQIS should include copies of the privileged and the produced documents it identified in the opposition to support the privilege (Docket Entry # 326, Nos. 507, 508, 515, 1114, 1124, 1130, 1136, 1139, 1826, 2ACQ0725046, 2ACQ0725047). In submitting the documents for review, ACQIS should not include any ex parte arguments.

## CONCLUSION

In accordance with the foregoing discussion, the motion (Docket Entry ## 317, 321) is **DENIED** without prejudice as to the withheld documents listed in subcategories A and B and the first

bullet point in subcategory C (Docket Entry # 326, ¶¶ II(A)-(C), pp. 3-4) to be renewed, if necessary, after review of the declarations. The motion (Docket Entry ## 317, 321) is otherwise held in abeyance pending review *in camera* of the withheld documents in the second through fifth bullet points of subcategory C. ACQIS shall provide these documents ex parte and under seal to this court on or before November 22, 2017 and shall provide the declarations to EMC on or before November 29, 2017.

                                       /s/ Marianne B. Bowler
                                    **MARIANNE B. BOWLER**
                                      United States Magistrate Judge