UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACQIS, LLC, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 14-cv-13560-ADB |
| EMC CORPORATION, | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff ACQIS, LLC ("ACQIS") brought this action against Defendant EMC Corporation ("EMC") alleging infringement of patents relating to modular computing systems. After nearly nine years of litigation, spanning several jurisdictions, the Court granted summary judgment to EMC on February 19, 2021. [ECF No. 664]. ACQIS appealed the Court's judgment, and the Federal Circuit affirmed on May 18, 2022. See ACQIS, LLC v. EMC Corp., No. 2021-1772, 2022 WL 1562847 (Fed. Cir. May 18, 2022). EMC then moved the Court to declare this case exceptional and to award attorneys' fees, pursuant to 35 U.S.C. § 285, in the amount of $6,000,000. [ECF No. 679]; see [ECF No. 679-1]. The Court granted EMC's motion to declare the case exceptional, but denied the motion for attorneys' fees, finding that it could not, based on EMC's documentation supporting its motion, evaluate the reasonableness of EMC's request, and directed EMC to refile its motion with additional documentation. See generally [ECF No. 722 (the "Order")]. Presently before the Court is EMC's renewed motion for fees. [ECF No. 726]. For the reasons that follow, EMC's motion is GRANTED in part and DENIED in part.

I.      **SELECTED PROCEDURAL HISTORY**

   A.      **This Court's Claim Construction**

The Court held its Markman hearing on July 27 and 28, 2017 and issued a Memorandum and Order ruling on disputed claim constructions on December 8, 2017. [ECF No. 389]. Three terms or phrases, "Peripheral Component Interconnect (PCI) bus transaction," "Encoded . . . serial bit stream of Peripheral Component Interconnect (PCI) bus transaction and related terms," and "communicating . . . PCI bus transaction," were construed (either by the Court or by stipulation between the parties). See generally [id.]. EMC wrote to ACQIS shortly after the Court's claim construction order was entered, asserting that ACQIS must dismiss the case, given that the Court's claim constructions "preclude[] infringement as a matter of law." [ECF No. 680 at 15 (citing [ECF No. 681-1 at 2])]. EMC further stated that it believed this case was exceptional and that EMC would be entitled to attorneys' fees. [Id. at 16].

   B.      **Summary Judgment**

The parties proceeded to file motions for summary judgment and partial summary judgment, motions to strike, and Daubert motions. See [ECF Nos. 237, 354, 356, 413, 418, 419, 445, 448, 450, 452, 455, 461, 464, 466, 494, 498, 502, 506, 509, 511, 513, 515, 518, 521, 524, 527]. On April 9, 2019, the Court granted ACQIS' Motion for Summary Judgment on EMC's Affirmative Defense of Estoppel, Waiver, and Implied Waiver, [ECF No. 445], as unopposed, [ECF No. 640], and denied ACQIS' Motion for Summary Judgment on EMC's Affirmative Defense of Failure to State a Claim, [ECF No. 448], finding that because "the validity (or non-validity) of the failure to state a claim defense [is] purely academic, in the circumstances of this case, [the Court] does not see how summary judgment on the defense will have any impact on this litigation[,] . . . [and] [t]he defense does not appear to entitle either party to judgment as a

matter of law that will resolve any claim or narrow the issues for trial," [ECF No. 641]. Finally, on February 19, 2021, the Court granted EMC's motion for summary judgment of non-infringement, [ECF No. 502], based on the claim constructions above, and denied as moot the remaining motions, [ECF No. 664].

On May 18, 2022, the Federal Circuit affirmed the Court's summary judgment opinion. ACQIS, LLC, 2022 WL 1562847, at *1.

### C.     Motions for Fees

Following the Court's Order denying EMC's first motion for fees, which directed EMC "to file additional documentation that provides sufficient detail on the nature of its attorneys' work and the time spent doing that work to allow the Court to evaluate the reasonableness of the hours underlying its fee request," [Order at 25–26], EMC filed the instant motion, with supplemental documentation, [ECF Nos. 726, 729]. ACQIS opposed the motion, EMC filed a reply in further support of its motion, and ACQIS filed a sur-reply. [ECF Nos. 734, 740, 746].

## II.   DISCUSSION

In its prior Order, after declaring that the case was exceptional, the Court held that EMC's "reasonable fees incurred after this Court's claim construction order through the Court's summary judgment order" were recoverable, but that it lacked sufficient information to determine whether the fees EMC sought to recover were reasonable. [Order at 19–21 (emphasis removed)].

As the Court stated in the Order:

> In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. Day v. Gracy, No. 18-cv-10396, 2019 WL 3753947, at *2 (D. Mass. Aug. 8, 2019) (citing Tenn. Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994)) (further citation omitted); see also Agfa Corp. v. Creo Prods., Inc., No. 00-cv-10836, 2004 WL 2387288, at *1 (D. Mass. Oct. 5, 2004) ("The 'lodestar' approach is the appropriate starting point for an attorneys'

fee award under 35 U.S.C. § 285." (citing Codex Corp. v. Milgo Elec. Corp., 717 F.2d 622, 631–32 (1st Cir. 1983))), aff'd, 451 F.3d 1366 (Fed. Cir. 2006). "The lodestar figure is calculated by 'multiplying the number of hours productively spent by a reasonable hourly rate.'" WBIP, LLC v. Kohler Co., No. 11-cv-10374, 2014 WL 4471412, at *1 (D. Mass. Sept. 8, 2014) (quoting Torres–Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008)).

> In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary . . . . [T]he court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort.

Day, 2019 WL 3753947, at *2 (internal quotation marks and citations omitted).

As the fee applicant, EMC "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "These materials should include counsel's contemporaneous time and billing records, suitably detailed, and information [about] the law firm's standard billing rates." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 12 (1st Cir. 2011).

> Contemporaneous time records [should] . . . provide details about the work, such as the date it occurred, the kinds of work that were done and the percentage of time spent at each task, i.e., telephone calls, writing letters, drafting briefs, waiting in court, etc. This allows the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent.

Calhoun v. Acme Cleveland Corp., 801 F.2d 558, 560 (1st Cir. 1986). "[T]ime records may be too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like." Torres-Rivera, 524 F.3d at 336. "[A court] may discount or disallow the total hours claimed if it determines that the time is insufficiently documented." Id. (citing Hensley, 461 U.S. at 433) (further citation omitted); see also Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 (1st Cir. 1991) (affirming district court's denial of an "initial fee application" that "was bereft of contemporaneous time records or any other suitable documentation" and therefore "woefully deficient" because "[b]y making such a barebones proffer, appellants deprived the court of the wherewithal it needed to make an intelligent lodestar calculation").

[Order at 21–22].

### A. Hours Reasonably Expended

EMC's renewed motion, supported by additional documentation, now seeks an award of $5,864,743.72 for 6,967.4 hours billed "between the issuance of this Court's claim construction order and the Court's summary judgment order disposing of the case." [ECF No. 727-6 at 7–8]. After an applicant has made its case, the district court must review the fee request and "exclude . . . hours that were not 'reasonably expended.'" Hensley, 461 U.S. at 434. "There is no precise rule or formula" for determining fee reductions in this context. Id. at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award . . . . The court necessarily has discretion in making this equitable judgment." Id. at 436–37. "The court may also reduce billed hours for non-complex tasks." Jin Hai Li v. Foolun, Inc., 273 F. Supp. 3d 289, 294 (D. Mass. 2017). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 563 U.S. 826, 838 (2011). As such, "[t]he First Circuit does not require courts to set forth an hour-by hour analysis of a fee request." Jin Hai Li, 273 F. Supp. 3d at 294 (quotations omitted). "Nevertheless, when a district court makes a substantial reduction in fees requested, the Court should offer reasonably explicit findings and has a burden to spell out the whys and wherefores." Id. (internal quotations and citations omitted).

ACQIS argues that like its previous submissions, EMC's documentation is insufficient in that it "fails to prove the number of hours spent by each lawyer on each legal task." [ECF No. 734-1 at 5–7]. Additionally, ACQIS asserts that EMC's request includes tasks for which it is not entitled to recover fees—"(1) waived invalidity defenses, (2) summary judgment tasks that EMC

unreasonably forced, and (3) certain non-infringement tasks"—and that EMC's supporting documentation does not allow the Court or ACQIS to disaggregate time spent on these tasks from those for fees for recoverable tasks. [Id. at 7–11]. Given these issues, ACQIS contends that the Court should deny EMC's request for fees. [Id. at 5, 12].

EMC responds that its documentation is sufficient, and that even if the Court finds it is lacking sufficient detail, it should impose a reduction rather than deny EMC's fee request altogether. [ECF No. 740-1]. Further, EMC argues that the fees associated with the specific tasks ACQIS identifies were reasonably incurred and recoverable. [Id.].

In urging the Court to reject EMC's fee application for, in ACQIS's view, failing to submit sufficient documentation with its request, ACQIS repeatedly points to Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984). See [ECF No. 734-1 at 5, 6, 8, 10–11]; [ECF No. 746-1 at 6–8]. In Grendel's Den, the First Circuit held that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." 749 F.2d at 952. The First Circuit has since explained, citing Grendel's Den and other cases, that its "cases make clear that prevailing parties who intend to seek counsel fee awards ordinarily must ensure that contemporaneous time records are kept in reasonable detail . . . [and that] [t]hese precedents warn that failure to do so may have deleterious consequences (such as the slashing or disallowance of an award)." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001) (citing Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992); Grendel's Den, 749 F.2d at 952). On the other hand, the First Circuit has also upheld a district court's decision to accept documentation other than "original time sheets," holding that the fact that "counsel, in helping to prepare the fee application, transcribed the notations on their time sheets verbatim and, for ease

in reference, incorporated the transcriptions in compilations, did not compromise the integrity of their billing records," where the attorneys attested to having kept contemporaneous time sheets. Gay Officers Action League, 247 F.3d at 297. Although ACQIS's sur-reply argues otherwise, there is no indication that EMC did not keep contemporaneous time records, especially where EMC has produced an excel spreadsheet with information for nearly 1,800 individual time entries and states that these time entries were contemporaneously kept. See, e.g., [ECF No. 729-6 at 2; ECF No. 740-1 at 10]. As such, as in Gay Officers Action League, the Court declines to reject EMC's fee application for failing to submit its actual time sheets.

That said, many of these time entries were block billed, that is, a single time entry covers time spent on multiple tasks, which means that neither the Court nor ACQIS can assess whether time spent on individual tasks was excessive, duplicative, or otherwise unreasonable. See Calhoun, 801 F.2d at 560. "Block billing is generally disfavored by courts and sanctioned by reducing the fee." Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 196 (D. Mass. 2013) (citing EEOC v. AutoZone, Inc., 934 F. Supp. 2d 342, 354–55 (D. Mass. 2013)). "The First Circuit has found that a global reduction to sanction block billing is not inappropriate." Id. at 196–97 (citing Torres-Rivera, 524 F.3d at 340). The Court will impose a twenty-percent global reduction to account for block billing. See id. at 197 ("Given the use of block billing and failure to allocate time to specific tasks, the Court deems that a twenty-percent global reduction to the lodestar hours is reasonable."); In re Volkswagen & Audi Warranty Extension Litig., 89 F. Supp. 3d 155, 177 (D. Mass. 2015) (same); AutoZone, Inc., 934 F. Supp. 2d at 355 (same). The Court also finds that the time spent on both summary judgment and expert motions, as estimated by EMC, was excessive, and the Court will therefore impose an additional five percent global reduction.

Finally, with regards to the timeframe when work was done following the claim construction decision, as another session of this court found in DataTern, Inc. v. MicroStrategy, Inc., where the case became exceptional after the court's claim construction decision, it would be unreasonable to expect a party to "dismiss its claims the moment the decision is rendered—presumably, without even consultation between the attorneys and the client, and without any consideration of possible alternatives.  That is, of course, an extreme and unrealistic scenario." No. 11-cv-11970, 2018 WL 6310274, at *2 (D. Mass. Dec. 3, 2018).  Thus, the DataTern court declined to award fees incurred in the six weeks following its claim construction decision, estimating this as a reasonable amount of time for the parties to evaluate their litigation positions based on the claim construction decision.  Id.  The Court relies on the same estimate and will not award fees prior to January 22, 2018.

ACQIS's other arguments for denying EMC's fee request, related to hours spent on non-infringement tasks, are unavailing.  [ECF No. 734-1 at 7–11].  The Court finds that EMC, following claim construction, reasonably undertook tasks relating to invalidity, responded to ACQIS's other summary judgment motions, and performed other non-infringement tasks, and fees associated with these tasks are recoverable.

### B.     Rates

In support of its fee request, EMC states that its counsel, Gibson Dunn, "billed a blended rate of $842 per hour from December 8, 2017 to February 19, 2021 . . . [which] reflects a blended rate of $996 per hour for partners; $747 per hour for of counsel and associates; and $340 per hour for litigation paralegals."  [ECF No. 727-6 at 11 (citation omitted)].  Under the lodestar approach, reasonable hourly rates are determined based on "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys

involved)." Gay Officers Action League, 247 F.3d at 295 (citing Lipsett, 975 F.2d at 937; United States v. Metro. Dist. Comm'n, 847 F.2d 12, 15–17 (1st Cir.1988); Grendel's Den, 749 F.2d at 950–51).

EMC makes several arguments as to the reasonableness of its counsel's, Gibson Dunn's rates "in view of the specialized requirements of patent litigation and the corresponding qualifications of the attorneys retained by EMC," including that: (1) Gibson Dunn's rates are comparable with those in the American Intellectual Property Law Association ("AIPLA") Report of the Economic Survey, which is an appropriate benchmark; (2) EMC actually paid Gibson Dunn's rates; (3) "other courts have also found similar rates billed by Gibson Dunn attorneys to be reasonable, including in cases less complex than this patent litigation"; and (4) ACQIS's national counsel, King & Spalding, has billed similar rates. [ECF No. 727-6 at 11–14]. As discussed above, ACQIS argues generally that EMC has failed to carry its burden to support the reasonableness of its fee request and although ACQIS focuses primarily on the hours EMC expended, this argument seems to also apply to Gibson Dunn's rates. See, e.g., [ECF No. 734-1 at 6; ECF No. 746-1 at 6, 10–11].

The Court finds that the AIPLA Survey is useful for evaluating the reasonableness of EMC's counsel's rates. See Ascion, LLC v. Ruoey Lung Enter. Corp., No. 09-cv-11550, 2014 WL 972138, at *2 (D. Mass. Mar. 13, 2014). EMC asserts that the blended rates billed by its partners and associates are comparable to the AIPLA Survey's rates for "patent attorneys in the Boston metro area." [ECF No. 727-6 at 12]. Specifically, EMC avers that Gibson Dunn's partners' blended average rate of $996 is comparable to the AIPLA rate of $1,015 for "the third quartile of equity partners in the Boston metro area," and its associates' blended average rate of $747 is comparable to the AIPLA rate for "the median hourly billing rate for 'partner-track'

9

attorneys in the Boston metro area ($675 per hour) and the third quartile for the same attorneys ($805 per hour)." [Id.].  The Court notes that even though EMC's blended average partner rate is below the third-quartile rate for equity partners in Boston, it is also above both the mean and median rates ($747 and $800, respectively).  [ECF No. 727-1 at 4].  Nevertheless, the third-quartile for equity partners is a reasonable benchmark for these attorneys, given their experience and expertise in complex patent litigation.  See [ECF No. 729-5 at 2–15]; see also, e.g., Alzheimer's Inst. of Am. v. Eli Lilly & Co., No. 10-cv-00482, 2016 WL 7732621, at *3 (N.D. Cal. Apr. 14, 2016) ("Although Defendant seeks a rate of $775.00 per hour for one senior partner, Lloyd Day, who billed 96.9 hours to the case, Defendant states that Mr. Day has been a lawyer for decades, is 'highly experienced' and 'specialize[s] in patent, trade secret, and copyright litigation.' . . . Given his experience, his rate, which is slightly above the AIPLA third quartile rate for partners in San Francisco in 2010, is reasonable.").  The Court finds that both Gibson Dunn's partners' and associates' blended rates are comparable to the AIPLA Survey's rates for similar attorneys in the Boston area, which provides strong evidence for their reasonableness.

As to Gibson Dunn's paralegals' hourly rate of $340: other courts have found similar or higher paralegal hourly rates reasonable in the context of complex patent litigation.  See CliniComp Int'l, Inc. v. Cerner Corp., No. 17-cv-02479, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (holding that rates of $495, $420, and $415 for three paralegals were reasonable) (citing Facebook, Inc. v. Power Ventures, Inc., No. 08-cv-05780, 2017 WL 3394754, at *7 (N.D. Cal. Aug. 8, 2017) ("approving Orrick's hourly rates of up to $1,200 for a partner, $800 for an associate, and $430 for a paralegal as reasonable" (emphasis added)); Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc., No. 20-cv-04816, 2022 WL 870206, at *4 (N.D. Ga. Feb. 22,

10

2022) (approving hourly rates of up to $1,318 for partners, $935 for associates, and $450 for paralegals as reasonable) (other citations omitted)), vacated on other grounds, 65 F.4th 667, 670 (Fed. Cir. 2023)).

Finally, the fact that EMC paid Gibson Dunn's rates, though not determinative, lends additional support to the reasonableness of their rates. See Hutchinson ex rel. Julien, 636 F.3d at 16 ("[T]he rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." (citing United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 40 (1st Cir. 2008))); see also Junker v. Eddings, 396 F.3d 1359, 1365 (Fed. Cir. 2005) ("[T]he amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee.").

Based on the foregoing, the Court finds that Gibson Dunn's rates were reasonable.

### C. Fee Calculation

As noted above, EMC seeks "$5,864,743.72 for fees incurred and paid between the Court's December 8, 2017 Memorandum and Order on Claim Construction . . . and the Court's February 19, 2021 Order granting EMC's motion for summary judgment of noninfringement." [ECF No. 727-6 at 7 (citations omitted)]. For the reasons discussed, the Court will not award fees prior to January 22, 2018. This reduces EMC's fee request by $472,503.53 to $5,392,240.20. The Court will also impose a twenty percent global reduction to account for block billing and five percent global reduction for excessive hours spent on summary judgment motions and expert reports. The Court will thus award EMC **$4,044,180.15** in attorneys' fees.

### III. CONCLUSION

EMC's motion, [ECF No. 726], is DENIED in part and GRANTED in part. EMC shall be awarded **$4,044,180.15** in attorneys' fees.

**SO ORDERED.**

March 6, 2024                                              /s/ Allison D. Burroughs
                                                           ALLISON D. BURROUGHS
                                                           U.S. DISTRICT JUDGE